# In the United States Court of Federal Claims

No. 20-894

Filed: April 11, 2022

|  |  |
|---|---|
| CLIFFORD HILAIRE, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) ) |
| THE UNITED STATES, | ) ) ) |
| *Defendant*. | ) ) |

*Clifford Hilaire*, Pro Se.

*Eric J. Singley*, Trial Attorney, with whom were *Jeffrey Bossert Clark*, Acting Assistant Attorney General, *Robert E. Kirshman, Jr.*, Director, *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**MEYERS, Judge**.

      In this military pay case, Clifford Hilaire seeks compensation he claims to be owed by the United States Marine Corps for time he spent working as a reserve officer between drills. Mr. Hilaire also seeks to have certain adverse items removed from his record. The Government has moved to dismiss or for judgment on the administrative record and Mr. Hilaire has cross-moved for judgment on the administrative record. Because the governing statute and regulations do not authorize payment for the activities Hilaire alleges he performed without compensation, the Court dismisses Mr. Hilaire's monetary claims. Mr. Hilaire also moved to transfer his nonmonetary claims to a district court if this Court determined that it lacked jurisdiction to resolve them. Because the Court lacks jurisdiction to resolve these nonmonetary claims and finds transfer would be in the interest of justice, the Court grants Mr. Hilaire's motion to transfer his nonmonetary claims to the United States District Court for the District of Maryland.

### I.    Background[1]

---

[1] The background is based on information in the Complaint, exhibits attached to it, and the Administrative Record.

Plaintiff, Clifford Hilaire, accepted a commission as a second lieutenant in the United States Marine Corps Reserve in 2016. AR at 379 (ECF No. 14). Following training, the Marines assigned Hilaire as the battalion adjutant of the Fourth Combat Engineering Battalion in March 2018. AR at 400. Things did not get off to a good start for Mr. Hilaire in the Marines. By June 2018, other Marines were raising issues with Mr. Hilaire's performance that continued through 2018 and are documented in a command investigation report ("CIR"). AR at 107-10. This investigation made several factual findings, many of them contemporaneous with the events that give rise to Mr. Hilaire's complaint filed in this Court. To be clear, the Court understands that Mr. Hilaire disputes the investigation's findings. The Court does not assume any of those findings to be true, only that they were made.

In September 2018, Mr. Hilaire received formal counseling for two separate incidences: his failure to respond to requests to participate in an Inspector General's report, and his failure to attend a pre-drill conference call. ECF No. 1-1 at 3, 7-9[2]; AR at 109. Although there is some indication that Mr. Hilaire refused to sign the counseling (at least initially) and stated he "did not want his personal schedule messed with," he appears to have signed the counseling form. ECF No. 1-1 at 3, 7-9; AR at 109, 171.

In response to his fitness report for the period March to December 2018, which was not good, see ECF No. 1-1 at 10-15, Mr. Hilaire alleges a lack of counseling, training, and mentorship by the Marines. AR at 194-95. Mr. Hilaire contends he spent several hours per month using his own "time, computer, electricity, software, and other resources to complete unit projects outside of drill hours." AR at 194. He also alleges he spent "dozens of hours" performing this work without "proper orders" in violation of the Anti-Deficiency Act. AR at 194. Mr. Hilaire asked that his rating be changed because it did not reflect the "several hours per month" he spent working without compensation on monthly conference calls, coordinating staff, developing digital products, and creating presentations. AR at 195.

Plaintiff received his fitness report in February 2019 and shortly thereafter contacted Senator Ben Cardin regarding alleged violations of the Anti-Deficiency Act because his command was "soliciting 'voluntary' services (no pay, no point) from its RC members to meet self-imposed additional IDT requirements." ECF No. 1-1 at 16-18; AR at 30, 192. In April 2019, the Commanding General of the 4th Marine Division commenced an investigation into Mr. Hilaire's performance. AR at 103. The investigation was the basis for a June 21, 2019, Report of Misconduct. AR at 100. In July 2019, the Marines transferred Mr. Hilaire to the Individual Ready Reserve (IRR). AR at 50-51. His transfer to the IRR was "due to his unacceptable performance as the Adjutant of 4th Combat Engineering Battalion." AR at 54. In April 2020, Mr. Hilaire was administratively separated from the Marine Corps Reserve. AR at 381-83.

---

[2] Because the exhibits to the Complaint (ECF No. 1-1) do not have consecutive pagination, the Court cites to the ECF Header pagination. When evaluating a Rule 12(b)(6) motion, the Court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *A&D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014). Here, the Complaint incorporates the "statement of claim" that Mr. Hilaire filed and its exhibits at ECF No. 1-1.

Mr. Hilaire submitted two applications to the BCNR. The first sought to remove the adverse fitness report covering March to December 2019 from Mr. Hilaire's official record. AR at 21. The second sought to "overturn" his involuntary transfer to the IRR and award him backpay and retirement points. AR at 398. With respect to the second application, Mr. Hilaire alleged his transfer to IRR in July 2019 was in retaliation for him contacting Senator Cardin. AR at 398. The BCNR declined to grant the requested relief and Mr. Hilaire filed his complaint in July 2020 challenging the BCNR's decisions.

## II. Standards of Review

### A. Motion to dismiss for lack of subject matter jurisdiction.

This Court, like all federal courts, is one of limited jurisdiction. *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). The determination of the Court's subject matter jurisdiction "is a threshold issue that the Court must address before examining the merits." *Bannum, Inc. v. United States*, 115 Fed. Cl. 148, 153 (2014) (citations omitted); *see also Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010) ("Subject matter jurisdiction is a threshold requirement for a court's power to exercise jurisdiction over a case . . . ."). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Rule of the Court of Federal Claims ("RCFC") 12(h)(3).

When deciding a motion under RCFC 12(b)(1), the Court "normally consider[s] the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). The Plaintiff "bears the burden of showing jurisdiction by a preponderance of the evidence." *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)). "It is well established that complaints filed by pro se plaintiffs are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Hale v. United States*, 143 Fed. Cl. 180, 184 (2019) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). But "the lenience afforded pro se litigants with respect to mere formalities does not relieve them of jurisdictional requirements." *Demes v. United States*, 52 Fed. Cl. 365, 368 (2002) (citing *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)). In other words, "even pro se plaintiffs must persuade the court that jurisdictional requirements have been met." *Hale*, 143 Fed. Cl. at 184.

### B. Motion to dismiss for failure to state a claim upon which relief can be granted.

A complaint is properly dismissed for failure to state a claim under RCFC 12(b)(6) "'when the facts asserted by the claimant do not entitle him to a legal remedy.'" *Spectre Corp. v. United States*, 132 Fed. Cl. 626, 628 (2017) (quoting *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)). To survive a motion to dismiss under RCFC 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570). In deciding a motion under RCFC 12(b)(6), "the court must accept as true the complaint's undisputed factual allegations and should

construe them in a light most favorable to the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009).

### III.  Jurisdiction of this Court.

The Government first moves to dismiss the Complaint for lack of subject matter jurisdiction because the Plaintiff cites only the Tucker Act, 28 U.S.C. § 1491(a), as the basis for his claim.[3]  It is long settled that the Tucker Act "is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976).  Therefore, for Plaintiff to bring a claim, "a substantive right must be found in some other source of law, such as 'the Constitution, or any Act of Congress, or any regulation of an executive department.'" *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting 28 U.S.C. § 1491(a)(1)).  Further, "the claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *Id.* at 216-17 (quoting *Testan*, 424 U.S. at 400).  Such sources of law are "money-mandating." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*).  Finally, Plaintiff must provide a nonfrivolous argument that he is "within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).

#### A.  This Court lacks jurisdiction over Plaintiff's claims under the Fair Labor Standards Act.

Although the Plaintiff does identify the Fair Labor Standards Act ("FLSA") as a statute providing the money-mandating source of law for his claim, his arguments make clear that he is clearly relying on it at least in part as his money-mandating source of law.  For example, Plaintiff argues that "unless a reserve member voluntarily waives his/her right to be monetarily compensated (*e.g.* 37 U.S. Code § 1002), monetarily [sic] compensation is required for duty performed (Fair Labor Standard[s] Act-**FLSA**)."  ECF No. 18 at 2 (emphasis in original).  Plaintiff also identifies whether the FLSA applies to him as an issue presented to the Court in this matter, and specifically whether the Marine Corps' adverse personnel action—*i.e.*, his transfer to the IRR and eventual separation from the Marine Corps—violates the FLSA's anti-retaliation provision. *Id.*

Although the FLSA is a money-mandating statute, there is no nonfrivolous argument that Plaintiff is within the class entitled to recover under it, meaning the FLSA cannot provide a money-mandating source of law for Plaintiff's claims.  The Court's analysis of the FLSA's application begins and ends with its text.  In broad strokes, the FLSA provides that each "employer" must pay at least a minimum amount of compensation to each "employee" for work performed. *See* 29 U.S.C. § 206.  The FLSA also prohibits retaliation by an "employer" against an "employee" when "the employee (or an individual acting at the request of the employee) has . . . objected to, or refused to participate in, any activity, policy, practice, or assigned task that the

---

[3] Plaintiff also cites the "Little Tucker Act," 28 U.S.C. § 1346(a), as a basis for the Court's jurisdiction.  But Section 1346(a) is better understood as a grant of concurrent jurisdiction to the district courts rather than a grant to this Court.  Because there is no difference in the analysis, this Court analyzes its jurisdiction under Section 1491.

4

employee (or other such person) reasonably believed to be in violation of any provision of this title . . . ." 29 U.S.C. § 218c(a)(5).

As with all statutes, the FLSA's definitions of its terms are critical to its understanding. The FLSA defines the term "employer" to include the United States Government because it is "a public agency." 29 U.S.C. §§ 203(d), (x). The question, then, is whether Plaintiff is an "employee" under the FLSA. He is not. The FLSA defines an "employee" as "any individual employed by the Government of the United States – (i) as a *civilian* in the military departments (as defined in section 102 of Title 5) . . . ." 29 U.S.C. § 203(e)(2)(A)(i) (emphasis added).[4] As a uniformed officer of the Marine Corps, Mr. Hilaire was not employed as a civilian by the Department of the Navy, which includes the Marine Corps. *See* 10 U.S.C. § 8061 (providing that the Department of the Navy includes the Marine Corps). Therefore, Plaintiff cannot qualify as an "employee" under the FLSA in this action.

Because the FLSA excludes Plaintiff from its definition of "employee," he cannot make any nonfrivolous claim that he is "within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc.*, 525 F.3d at 1309. Therefore, the Court lacks jurisdiction to address Plaintiff's claims under the FLSA and dismisses the Complaint insofar as it seeks relief under the FLSA.

> **B.     The Military Pay Act provides this Court jurisdiction for Plaintiff's claims for pay.**

Given that the Plaintiff is proceeding *pro se*, he is not held to the same standard of pleading as a member of the Court's bar would be. *E.g.*, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) ("It is settled law that the allegations of such a complaint, 'however inartfully pleaded' are held 'to less stringent standards than formal pleadings drafted by lawyers . . . .'") (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Although the Plaintiff does not provide a citation to a specific statute in his Complaint, he does say that he is seeking "to recover military pay," ECF No. 1 at 1, which the Court understands to invoke the Reserve provisions of the Military Pay Act, 37 U.S.C. § 206. And Plaintiff invokes 37 U.S.C. § 206 explicitly in his response to the Government's motion. ECF No. 18 at 1.[5]

The Military Pay Act provides that:

> (a) Under regulations prescribed by the Secretary concerned, and
> to the extent provided for by appropriations, a member of the

---

[4] 5 U.S.C. § 102 defines the "military departments" as the Departments of the Army, Navy, and Air Force.

[5] Plaintiff also identifies 37 U.S.C. § 204(g)(1) as providing a money-mandating statute entitling him to compensation. This provision provides for compensation to Reserve members injured while on active duty. Because Plaintiff acknowledges that this citation was in error and does not seek relief under it, ECF No. 20 at 1 ("The citation of 37 U.S.C. § 204(g)(1) was a typo and should have been removed from the plaintiff's last draft of the response."), the Court does not address it here.

> National Guard or a member of a reserve component of a uniformed service who is not entitled to basic pay under section 204 of this title, *is entitled to compensation*, at the rate of 1/30 of the basic pay authorized for a member of a uniformed service of a corresponding grade entitled to basic pay -- (1) for each regular period of instruction, or period of appropriate duty, at which the member is engaged for at least two hours, including that performed on a Sunday or holiday; [or] (2) for the performance of such other equivalent training, instruction, duty, or appropriate duties, as the Secretary may prescribe . . . .

37 U.S.C. § 206 (emphasis added). The Military Pay Act is a money-mandating statute. *E.g.*, *Antonellis v. United States*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) ("We have long recognized that the Military Pay Act 'provides for suit in [the Court of Federal Claims] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay.'") (quoting *Dysart v. United States*, 369 F.3d 1303, 1315 (Fed. Cir. 2004)). And Plaintiff, as a uniformed member of the Marine Corps Reserve, is "within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv., Inc.*, 525 F.3d at 1309. That is all that is necessary to establish the Court's jurisdiction. Whether Plaintiff can establish the elements of the statute is a question of whether he has failed to state a claim upon which relief can be granted, not jurisdiction. *Id.*

Plaintiff also cites several provisions of the Marine Corps Order, 1001R.1L, *Marine Corps Reserve Administrative Management Manual*, (Mar. 25, 2018) ("MCRAMM") as providing the money-mandating source of law necessary for his claims. ECF No. 18 at 1 (citing MCRAMM Ch. 3). But these provisions are not money-mandating because they do not compel the payment of any money. Instead, these provisions, MCRAMM Ch. 3 § 2 ¶¶ 2(c)(1), (3),[6] describe different types of duty and what they can be used for. For example, ¶ 2(c)(1) defines Additional Training Periods and specifies what they can and cannot be used for. Paragraph 2(c)(3) does the same for Readiness Management Periods. But nothing in the text of either provision mandates payment for these periods or even mentions how a Marine is to be compensated (if at all) for time spent in these activities. Therefore, these provisions are not money-mandating.

### IV.   Failure to State a Claim

#### A.   Plaintiff fails to state a claim for pay for drills or training that he did not attend.

The Government moves to dismiss Plaintiff's under RCFC 12(b)(6) insofar as Plaintiff seeks damages for drills that he could not attend because of his transfer to the inactive reserve and separation from the Marines. ECF No. 12 at 11-12. Although not entirely clear, Plaintiff

---

[6] Plaintiff cites MCRAMM Ch. 3 § 2 ¶¶ 2(c)(1), (2), ECF No 18 at 1, but the reference to ¶ 2(c)(2) appears to be a mistake because that section applies to flight training. It appears the Plaintiff intended to cite ¶ 2(c)(3), which addresses Readiness Management Periods. Because Plaintiff was not in aviation, the Court analyzes his motion under ¶¶ 2(c)(1), (3).

appears to acknowledge in his response that he is not entitled to such damages. ECF No. 18 at 2 (citing *Palmer v. United States*, 168 F.3d 1310, 1314 (Fed. Cir. 1999)); *see also id.* at 9-11 (discussing entitlement to pay). But in his reply, Plaintiff rejects the Government's contention that he admitted in his cross motion that he is not entitled to pay for drills he did not attend, while disclaiming any claim for pay for drills he did not attend. According to the Plaintiff, he "never conceded that Reservist is <u>only</u> entitled to claim compensation for *drills actually attended*, nor the plaintiff, in his cross motion, is claiming compensation for drill he would have had opportunity to attend had he not been separated." ECF No. 20 at 2 (emphases in original).

Whatever the Plaintiff contends, the Federal Circuit has made abundantly clear that members of the Reserve are only entitled to pay for drills they attended. As the Circuit explained, reservists "are paid by the military only for drills actually attended . . . and for active duty for training actually performed . . . ." *Palmer*, 168 F.3d at 1314 (internal citations omitted). This is true even in cases where a reservist is improperly removed from a paid billet. *Id.*; *see also Dehne v. United States*, 970 F.2d 890, 894 (Fed. Cir. 1992); *Reilly v. United States*, 93 Fed. Cl. 643, 649 (2010); *Greene v. United States*, 65 Fed. Cl. 375, 380-81 (2005). Therefore, to the extent Plaintiff seeks compensation for drills that he did not or was not permitted to attend, those claims are dismissed for failure to state a claim upon which relief may be granted pursuant to RCFC 12(b)(6).

### B. Plaintiff fails to state a claim for pay for pre-drill conference calls that he attended.

The Government also moves to dismiss the complaint because there is no statute that entitles Plaintiff to pay for attending conference calls. ECF No. 12 at 10. To state a claim, Plaintiff must show that 37 U.S.C. § 206 mandates payment for the pre-drill telephone calls that he attended without pay. Section 206 mandates payment for: (1) regular instruction or appropriate duty that lasts at least two hours and (2) other equivalent duties. 37 U.S.C. § 206(a)(1)-(2). The pre-drill conference calls are not within these activities for which pay is authorized.

First, it is beyond debate that the pre-drill calls are not periods of "regular instruction" because the Marines define the regular instruction periods as the 48 periods of instruction and 14 days of active-duty training per year required by 10 U.S.C. § 10147(a)(1). *See* MCRAMM Ch. 3, § 2, ¶ 2(b). This is very similar to the situation in *O'Hanlon v. United States*, 11 Cl. Ct. 192 (1986), in which an Army reservist sought compensation for time spent performing administrative duties in addition to his regular training periods. Mr. O'Hanlon was an administrative officer with the 2073 United States Army Reserve School. *Id.* at 193. Like Hilaire, the Army defined O'Hanlon's regular instruction as the 48 scheduled periods of instruction and 14 days of active-duty training per year. *Id.* In addition to that, his commanding officer required mandatory "administrative drills" that were compensated only with retirement points, just like the telephone conferences here. *Id.* at 194. Like Plaintiff, O'Hanlon sued for pay for the administrative drills because he did not attend these drills voluntarily. *Id.* And, like Hilaire, O'Hanlon complained of the strain these mandatory, unpaid drills "placed on his professional and private life." *Id.* Finally, O'Hanlon claimed that the prohibition on compensation only for retirement points meant that the Army violated its regulations when compelling him to work for only retirement points, just as Hilaire claims here. *Id.* at 196.

7

The Court found that O'Hanlon was not entitled to any compensation under Section 206 because his regular periods of instruction were the 48 scheduled assemblies each year. *Id.* at 196. The Court also found that the drills O'Hanlon complained of were not defined as appropriate substitutes for his regular drill periods. *Id.* at 197. The same is true here. To be an additional training period, either the Commander, Marine Forces Reserve or Operational Sponsors "may authorize the use of ATPs consistent with allocations provided by DC M&RA (RA)." MCRAMM Ch. 3, § 2, ¶ 2(c)(1)(f). Hilaire makes no allegation that any such order was authorized for his unit's conference calls. Rather, he contends that no such requirement exists. But the Marine Corps Manual clearly states that authorization is required. *Id.*

Second, the pre-drill conference calls are not "equivalent duties" that would create an entitlement to pay. Under the MCRAMM, Equivalent Duty Periods are those that are performed "in lieu of a missed regularly scheduled drill." *Id.* ¶ 2(b)(4)(a). Because the drills here were not in lieu of missed drills, they are not compensable as equivalent duties.

As Mr. Hilaire argued below, the Marine Corps Manual classifies "pre-drill meetings by key SMCR personnel in preparation for drill weekend" to be "Appropriate Duty." *Id.* ¶ 2(d)(2)(b)(10). And the Manual explains that such duty is "for retirement points only (non-paid) . . . ." *Id.* ¶ 2(d)(2)(a). But the Manual limits the use of non-paid duty: "Marines may *voluntarily* perform special additional duties as IDT periods for retirement points only (without pay)." *Id.* ¶ 2(d) (emphasis added). The fact that the Marines sought to compel Mr. Hilaire's attendance does not convert this to paid time. This is materially indistinguishable from O'Hanlon's arguments and the Court concludes that Mr. Hilaire is not entitled to compensation for the pre-drill teleconferences that he attended.

Therefore, Plaintiff fails to state a claim for pay based on the pre-drill conference calls being regular or appropriate duty under 37 U.S.C. § 206.

V.　　**Transfer of non-monetary claims.**

During the hearing on the cross motions, Hilaire indicated that he would move to transfer the non-monetary claims to a district court under 28 U.S.C. § 1631. *See* ECF No. 31. He filed his motion to transfer the nonmonetary claims, ECF No. 31, which the Government opposes as futile, *see* ECF No. 36. Because the Court finds transfer to be in the interest of justice, it will transfer Plaintiff's nonmonetary claims to the United States District Court for the District of Maryland.

28 U.S.C. § 1631 provides that if a "court finds that there is a want of jurisdiction," the court may, "if it is in the interest of justice," transfer the action to another court "in which the action . . . could have been brought at the time it was filed." Section 1631 functions as a means for a court to transfer a case, or portion of a case, over which it lacks jurisdiction to another court that has jurisdiction. *E.g.*, *Reilly*, 93 Fed. Cl. at 650. To transfer this case, the Court must find that it lacks jurisdiction, that the Plaintiff could have filed the case in another court, and that transfer is in the interest of justice. *See, e.g.*, *Ace Property & Cas. Ins. Co. v. United States*, 60 Fed. Cl. 175, 187 (2004), *aff'd*, 138 F. App'x. 308 (Fed. Cir. 2005) (citation omitted); *McLaughlin v. Arco Polymers, Inc.*, 721 F.2d 426, 428 (Fed. Cir. 1983) (explaining that section 1631 "authorizes the court in which a case has been improperly filed to transfer it to a court in

which the action or appeal could have been brought 'if it is in the interest of justice'") (quoting 28 U.S.C. § 1631).

The Government's opposition to transfer is based solely on the third requirement under Section 1631—that the transfer is not in the interest of judgment.  *See* ECF No. 36 at 2-9.  Even though the Government does not address the first two requirements regarding jurisdiction and Hilaire's ability to have filed in district court, this Court will assess them to ensure that transfer is proper before addressing whether transfer is in the interest of judgment.

### A.     This Court lacks jurisdiction over Plaintiff's nonmonetary claims.

The Plaintiff seeks to transfer his nonmonetary claims, which "are listed in the 'Plaintiff's Response and Cross-Motion for Judgment on the Administrative Record' . . . in section[s] III-V." ECF No. 31 at 3.[7]  In his Cross-Motion, Section III challenges the BCNR's refusal to remove an adverse fitness report from his official record.  ECF No. 18 at 6-9.  Section IV challenges the Marine Corp's legal analysis that Hilaire was not entitled to compensation.  *Id.* at 9-11.  And Section V challenges the BCNR's refusal to remove UCMJ violations from Hilaire's record.  *Id.* at 11-14.

As explained above, the Court has jurisdiction over Hilaire's claim for pay and dismisses it for failure to state a claim.  Therefore, the Court has jurisdiction over the claims in Section IV of Hilaire's Cross-Motion because Section IV argues that he is entitled to pay for the time he spent working between drills.  Because these claims are dismissed for failure to state a claim[8] rather than a want of jurisdiction, transfer under § 1631 is improper.

But the same is not true of his claims described in Sections III and V of his Cross-Motion.  These claims seek the removal of items from Hilaire's personnel file with the Marine Corps rather than monetary compensation.  Congress vested this Court with jurisdiction over monetary claims against the United States not sounding in tort.  28 U.S.C. § 1491(a).  And Congress recognized that there would times when this Court should be able to award non-monetary relief.  Therefore, the Court may order "restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records," but this relief is only permissible in cases in which such orders are "incident of and collateral to any such [monetary] judgment."  28 U.S.C. § 1491(a)(2).  But "this court 'has no power to grant affirmative non-monetary relief unless it is tied and subordinated to a money judgment.'" *Reilly*, 93 Fed. Cl. at 650 (quoting *James v. Caldera*, 159 F.3d 573, 580) (Fed. Cir. 1998) (additional citations omitted)).  As a result, this Court lacks jurisdiction to order the correction of Hilaire's records that he seeks.

---

[7] Because the Plaintiff's motion does not include page numbers, the Court cites the page numbers from the ECF Header.

[8] Section IV does argue Plaintiff's entitlement to pay under the FLSA.  Although this Court dismisses the FLSA claim for lack of jurisdiction, it does so because the FLSA's definition of an "employee" excludes Hilaire.  *See supra* Part IV.A.  Because no other Court would be able to grant relief to Hilaire under the FLSA, transfer of this claim would be futile.

Therefore, 28 U.S.C. § 1631's first requirement is satisfied here.

### B. Hilaire could have filed his nonmonetary claims in district court when he filed this case.

Next the Court must determine whether Hilaire could have filed his nonmonetary claims in the District of Maryland rather than here. 28 U.S.C. § 1631. As Judge Allegra framed the second question: "Next to be considered is whether a district court would have possessed jurisdiction over plaintiff's nonmonetary claims when this suit was filed—in other words, whether the district court would have had jurisdiction over plaintiff's nonmonetary claims under the APA." *Reilly*, 93 Fed. Cl. at 651. The Administrative Procedure Act waives sovereign immunity for "relief other than money damages." *Id.* (quoting 5 U.S.C. § 702). But the APA only allows such review "if there is no other adequate remedy." *Id.* (quoting 5 U.S.C. § 704).

Before turning to the nonmonetary claims, the Court addresses the propriety of transferring Hilaire's FLSA claims. Although it is not clear that he is seeking to transfer FLSA claims, transfer under 28 U.S.C. § 1631 is impossible because any district court would lack jurisdiction for the same reason this Court does—*i.e.*, because there is no nonfrivolous argument that Hilaire qualifies as an "employee" under the FLSA. Therefore, the Court does not transfer FLSA claims to the district court.

Hilaire could have brought his nonmonetary claims—those seeking correction of his record—in the District of Maryland.[9] Here too this Court agrees with Judge Allegra's approach and compelling analysis in *Reilly*. *See* 93 Fed. Cl. at 651-52. As explained above, Hilaire cannot recover money damages for the work he was compelled to do because neither statute nor regulation authorize payment. And these claims do not seek monetary relief; rather, they challenge the BCNR's refusal to grant Hilaire's requested corrections of his military record to remove disputed items. Thus, the nonmonetary claims appear to satisfy the APA requirements for bringing an action in the district courts. And courts in the Fourth Circuit also recognize their jurisdiction to hear challenges to BCNR decisions. *E.g.*, *Reape v. Stackley*, 723 F. App'x 181, 182 (4th Cir. 2018) (affirming summary judgment in a case challenging a BCNR decision); *Moss v. United States*, No. 7:06-CV-00051, 2006 WL 5547749, at *3 (E.D.N.C. Nov. 1, 2006), *report and recommendation adopted*, 549 F. Supp. 2d 721 (E.D.N.C. 2007), *aff'd*, 257 F. App'x 633 (4th Cir. 2007).

Therefore, the second § 1631 requirement is met.

### C. Transfer of Hilaire's nonmonetary claims is in the interest of justice.

The final requirement is that transfer "is in the interest of justice." 28 U.S.C. § 1631. Because this is a decidedly vague standard, this Court "is entitled to 'a good deal of discretion in

---

[9] The Court requested clarification as to which Court Hilaire sought to have his claims transferred to, and he responded the United States District Court for the District of Maryland. ECF Nos. 38-39.

reaching its determination.'" *Reilly*, 93 Fed. Cl. at 652 (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)).

The Government opposes transfer as futile because Hilaire will face long odds in district court because the standard of review is highly deferential. ECF No. 36 at 3-9. Indeed, the Government devotes one section of its opposition to the proposition that judicial review under the APA is "highly deferential," and another to the proposition that APA review of BCNR decisions is "*exceptionally* deferential." *Id*. at 4-7 (emphasis in original). Maybe so, but that cannot suffice to make transfer inappropriate because these arguments apply to every military pay case that comes before this Court. It cannot be that it is improper to transfer an entire class of cases under Section 1631. Rather, "transfers of actions filed in good faith generally are viewed as minimizing transaction costs and expediting review, thereby furthering the interests of justice." *Reilly*, 93 Fed. Cl. at 653.

While Hilaire may face long odds before the district court, it appears clear that he brings this action in good faith. He has a clear view that the Marine Corps' own regulations prohibited his being ordered to work without pay without his consent. And the MCRAMM appears to support his view. Indeed, this Court has long been concerned about the propriety of the Marine Corps' disciplining of Hilaire (at least in part) for refusing to volunteer his time. *See generally* ECF No. 24. This concern led the Court to question the Government during oral argument: "[I]f there was nothing authorizing the Marine Corps to order him to the conference calls without pay, then why does he have to attend the conference calls without pay?" ECF No. 33 at 8:11-14; *see also id.* at 8:11-12:17 (extended discussion of the question). This is not a frivolous claim.

That said, it may well be that the district court will review the record and determine that Hilaire's discipline was justified and the BCNR's denial of Hilaire's petition to correct his records proper. But that is for a court with jurisdiction to resolve, not this one.

## VI. Conclusion

For the reasons stated above, the Court:

1. Grants-in-part the Government's motion to dismiss, ECF No. 12, because the Court either lacks jurisdiction or Plaintiff's monetary claims against the United States fail to state a claim upon which relief can be granted. The Clerk is directed to enter judgment dismissing those portions of Plaintiff's complaint;

2. Grants-in-part Plaintiff's motion to transfer his nonmonetary claims to the United States District Court for the District of Maryland, ECF No. 31. Pursuant to 28 U.S.C. § 1631, the Court hereby TRANSFERS the remainder of this lawsuit, constituting Plaintiff's nonmonetary claims, to the United States District Court for the District of Maryland, Greenbelt Division; and

3. Denies all other pending motions, ECF Nos. 18 & 37, as moot.

IT IS SO ORDERED.

s/ Edward H. Meyers<br>
Edward H. Meyers<br>
Judge